## V. A. GASKILL AND WIFE *v.* BADGE & EATON *et al.*

DEED. *Mistake in registration. Rights of purchaser at sale to enforce vendor's lien.* *Case:* Alley sold and conveyed to Agnew and Haselton a half interest in certain tracts of lands. The deed was registered, but in the registration a mistake was made in this, that instead of conveying "the south-east quarter of section three" as in the deed, it conveyed as registered "the south-east quarter of section eleven." A bill was filed by Alley to enforce his vendor's lien, in which the description of the registered deed was followed. A decree for sale was had, and land sold and purchased by Whiteside. It was understood by all the parties that the south-east quarter of section three was sold. The proceeds of sale did not satisfy the decree. Afterward the error in registration was discovered and correction made. Haselton, upon finding the mistake, purchased Agnew's interest, and upon execution being issued for balance of unpaid purchase money due Alley, the south-east quarter of section three was sold, and he became the purchaser. Held, that as Alley's deed to Agnew and Haselton conveyed to them this quarter section, and Alley had enforced his lien on all the land conveyed, that he never claimed and never had any title to the south-east quarter of section eleven, and as the incorrect description did not mislead any one, but all understood it as referring to section three actually conveyed, and not to section eleven, that Whiteside the purchaser was entitled to the south-east quarter of section three as against Haselton. It might be different as to a *bona fide* purchaser without notice.

### FROM HAMILTON.

Appeal from the Chancery Court at Chattanooga. W. M. BRADFORD, Ch.

DEWITT & SHEPERD for complainant.

HYDE & BROWN, E. M. DODSON and NASH BURT for defendants.

DEADERICK, C. J., delivered the opinion of the court.

Erasmus Alley sold, and on the 7th day of January, 1859, conveyed to Agnew and defendant Haselton a half interest in certain lands in Marion county, described in the deed.

March 10, 1859, this deed was probated for registration, and registered thereafter. The deed conveyed a number of tracts of mountain land, amongst others "the south-east quarter of section three," which is one of the chief matters of contest in this suit. This deed was registered incorrectly in two particulars: first it is made to bear date of January 29, 1859, and instead of mentioning "the south-east quarter of section three," as registered it purports to convey "the south-east quarter of section eleven." In all other respects the deed as executed and the registered deed are alike, the numerous tracts conveyed being the same.

Agnew and Haselton paid down $3,500, and executed their notes for $4,000. These notes not having been paid at maturity, Alley filed his bill to enforce his lien for unpaid purchase money, and obtained a decree for the sale of the lands. But as the bill was filed after the deed was first and incorrectly registered, and before the second and corrected registration, the land was described as described in a copy of the deed taken from the Register's office.

Haselton and Agnew appealed to the Supreme Court, where, in 1866, the decree below was affirmed, and the lands ordered to be sold for the payment of the purchase money, about $5,900 still remaining due and

unpaid. In the decree ordering the sale the lands are described as in the deed as first registered, and it is added, being the same lands conveyed by complainants to defendants by deed of January 29, 1859. The lands were sold, including the south-east quarter of section three, on which the Vulcan Coal Mine had been opened, and which constituted the chief value of the whole. The complainant, Mrs. Whiteside, then became the purchaser at $5,500, and the sale was confirmed in 1867, and a writ of possession awarded.

In December, 1867, defendants Badge and Eaton, being in possession as tenants of Haselton, the complainant procured a writ of possession to issue to the sheriff, and under it they were about to dispossess the said Badge and Eaton, who were then operating the Vulcan mine, when they attorned to her and agreed to pay to her the rents of the mine. They continued in possession under this verbal agreement, paying rent to complainant until June 1, 1870, when they entered into a written contract with her, agreeing, amongst other things, to pay twenty-five cents a ton for all coal mined, and to pay at this rate for six hundred tons every month, whether they mined that much or not, and this contract was for five years, with the privilege to Badge and Eaton to continue it ten years. After her purchase complainant claimed a half interest in the mines and lands, and as executor of her late husband, Whiteside, an additional one-eighth, the residue being owned by Boyce and Cravens.

It seems that the deed of Alley stood uncorrected, and as at first registered, until 1872, when it w.

correctly registered, all the parties in interest knowing, or assuming that Alley's deed conveyed the Vulcan mines (located on the south-east quarter of section three), and that the land was correctly described in said deed, and correctly registered, until in 1870, complainant having an offer to purchase said Vulcan mines, caused her counsel to make an examination into the title, etc., when it was discovered that Alley's deed, as registered, did not include the "south-east quarter of section three," and in April of that year, 1870, she procured a deed to herself from Alley for this quarter section, which was registered on same day. Haselton and Agnew were citizens of New York, and perhaps did not discover the mistake in the registration of Alley's deed to them until Haselton visited the Ætna Mines, in which he had an interest, and which are near the Vulcan Mine, in October, 1872. Then he had the deed again registered, in which the south-east quarter of section three appeared, instead of south-east quarter of section eleven, erroneously copied in first registration of 1859.

Mrs. Whiteside's bid for the land at the sale under the decree of this court was not, by several hundred dollars, the full amount of the decree in favor of Alley for his unpaid purchase money.

In 1873 Haselton procured a conveyance from the heirs of Agnew, and in 1875, or thereabouts, upon an execution being issued from this court for the balance of unpaid purchase money due Alley, the south-east quarter of section three was sold, and Haselton be-

came the purchaser. It is upon these facts that the claim of the contestants is to be settled.

Another fact in the case should, perhaps, be stated. The deed of Alley and the decrees of this court, ordering and confirming the sale, reserve to the Nashville & Chattanooga Railroad Company certain water privileges on the land ordered to be sold. The water to which such privileges are reserved is said by one witness not to be on the south-east quarter of section three, but five or six yards outside of it, but we think the weight of evidence shows that the water is upon the said quarter section.

In view of all the facts in the record, it is very clear that Alley's deed to Haselton and Agnew conveyed to them this quarter section; that Alley filed his bill to enforce his vendor's lien upon all the land conveyed; that he claimed no title to the south-east quarter of section eleven, and had none; that the sale for purchase money was designed to embrace only the land sold, and all the land sold, and that the misdescription of the quarter section in controversy in the proceedings to enforce the vendor's lien, occasioned by the incorrect registration of the deed, in the first instance, did not mislead any of the parties as to the land actually sold, but all seemed to understand it as referring to the section actually conveyed, and not to a quarter of section eleven. It is apparent, therefore, that no one having been mislead, no one is injured by the error, as the part misdescribed was nevertheless understood by all the parties as being intended and meant by the description given as fully as if it

Gaskill *v.* Badge & Eaton.

had been described with literal accuracy. It is not a third person or innocent purchaser who is seeking to avail himself of the alleged error, but the original purchaser, in whose hands the lands were liable for the purchase money, and who acquiesed in the sale for years after it was made. If the said quarter section was not conveyed by said deed as first registered, then that deed being notice of what was sold, the title, although actually conveyed by Alley in the absence of notice of the true state of the facts, a bona fide purchaser might have gotten a good title from Alley before the correct registration of the deed.

Mrs. Whiteside took a conveyance from Alley in 1870, being in possession of the land under her purchase about two years before the deed of Alley to Haselton and Agnew was registered in its correct form, but it is not necessary to decide, and we therefore do not decide whether she acquired the title by this conveyance.

All the parties to the original transaction are before the court, and it would be inequitable to allow Haselton to take the title to the land for which Mrs. Whiteside has paid the purchase money, by reason of a mistake in the registration of the deed, which we have seen did not mislead any one, or occasion them any damage.

We conclude, therefore, that the Chancellor's decree on this branch of the case was correct, and should be affirmed.

In respect to the account for rents and appropriation of property attached, we are of opinion that as

to the rents, styled in the report "minimum" rents, that the balance of said rents be taken at $684.10, as stated by the master in his report.

As to the report of "maximum rents," the exceptions of defendant thereto should have been sustained, except to the extent of eighty-three tons, which should be charged.

Defendants Badge and Eaton should not be charged with the depreciation of property by ordinary use, and exception to this charge will be sustained, the complainants having left the property in their possession with liberty to use it without charge

With these modifications as to the matters of account, the Chancellor's decree will be affirmed and the cause will be remanded for prosecution of the inquiry ordered and further proceedings. The costs of this cause will be paid one-half by the complainant and one-half by the defendants, and the costs below as has been or may be adjudged by the Chancellor.